IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **A.L.L., A.L.** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO.  24-4998 |
| | : | |
| **LABORATORY CHARTER SCHOOL** | : | |

# MEMORANDUM

**MURPHY, J.**  **November 24, 2025**

This is one of two related IDEA cases arising from a parent's successful administrative action against her child's school. Often, when the family wins, both sides file an action in district court — the family for an award of fees and costs and the school to challenge the result. That's what happened here except that the school filed its action one day after IDEA's 90-day deadline. We granted the family's motion to dismiss.[1] And presumably that was the end of the school's challenge, leaving only the question of an appropriate award of fees and costs sought by the family in this action. But the school, after waiting several months and indicating that it would respond to the family's motion for fees and costs, took a creative left turn. It now moves to resuscitate its lost challenge and amend its answer in this case to attack the merits of the administrative decision. The family objects. We agree with the family that the school may not introduce a belated challenge to the merits of the administrative decision through an amended answer. We also grant the family's (entirely unchallenged) motion for fees and costs, and accordingly award $164,173.84 to the family.

---

[1] *Laboratory Charter School v. A.L.L.*, No. 24-5093, 2025 WL 1667361 (E.D. Pa. June 12, 2025).

I.      **FACTUAL BACKGROUND**

A.L.L. attended Lab Charter in Philadelphia from the beginning of first grade through the completion of fourth grade. DI 20-4 at 2. On January 30, 2024, A.L. filed a complaint with Pennsylvania's Office for Dispute Resolution (ODR) claiming that Lab Charter failed to provide her child a Free Appropriate Public Education (FAPE)[2] from the time of A.L.L.'s enrollment in the third grade (2021-2022 school year) through the fourth grade (2022-2023 school year), as well as during the applicable Extended School Year (ESY)[3] periods. *Id.* A.L. requested compensatory education for Lab Charter's alleged failure to provide her child with a FAPE. *Id.* Following a two-day, closed due process hearing, an ODR Administrative Hearing Officer (Hearing Officer) issued a "Final Decision and Order" on June 21, 2024. *Id.* at 1-2. In the Final Decision and Order, the Hearing Officer concluded that (1) A.L. met her burden of proving, by a preponderance of the evidence, that Lab Charter violated her child's right to a FAPE under the IDEA during the 2021-2022 and 2022-2023 school years and the applicable ESY periods; and (2) A.L.L., through A.L., was entitled to an award of hourly compensatory education for this

---

[2] A FAPE consists of "special education and related services" including "instruction tailored to meet a child's unique needs and sufficient supportive services to permit the child to benefit from that instruction." *Fry v. Napolean Cmty. Sch.*, 580 U.S. 154, 158 (2017) (citation modified).

[3] An ESY service is essentially summer school provided for students with disabilities determined to need such extended learning. *See S.H. v. State-Operated Sch. Dist.*, 336 F.3d 260, 268 (3d Cir. 2003); *see also Pottsgrove School District v. D.H.*, 2018 WL 4368154, *15 (E.D. Pa. Sept. 10, 2018) (explaining that ESY services only must be provided to a student with special needs if the student's IEP team determines such services are necessary for the student to receive a FAPE) (*citing* 34 C.F.R. § 300.106(a)(2)); *Coleman v. Pottstown Sch. Dist.*, 983 F. Supp. 2d 543, 566 (E.D. Pa. 2013), *aff'd by* 581 F. App'x 141 (3d Cir. 2014) (clarifying that "ESY services are only necessary to a FAPE when the benefits a disabled child gains during a regular school year will be significantly jeopardized if he is not provided with an educational program during the summer months.") (citation modified).

substantive denial of a FAPE.  *Id.* at 27.  The Hearing Officer thus ordered compensatory education for A.L.L. in the amount of five hours for each school day that Lab Charter was in session during this time period.  *Id.* at 28.

Three months later, A.L.L. and A.L. filed a complaint in our court.  DI 1.  In it, they claimed that they are the "prevailing party" within the meaning of the IDEA and Section 504 of the Rehabilitation Act — in light of the Hearing Officer's Final Decision and Order in their favor — and asked us to order Lab Charter to pay their reasonable attorneys' fees and costs arising from the administrative proceeding below.  *Id.* at 1, 8-9.

Lab Charter answered with various affirmative defenses.  DI 9 at 7-11.  Notably, Lab Charter asserted that it did not deny A.L.L. a FAPE nor otherwise deny him a reasonable educational opportunity.  *Id.* at 8.  It further maintained that the Hearing Officer substantially erred in finding that it denied Student a FAPE.  *Id.*  Lab Charter asked us to overturn the Hearing Officer's findings in all respects.  *Id.* at 9.

Meanwhile, Lab Charter pursued a separate challenge to the Hearing Officer's decision. The day after plaintiffs filed their complaint in this case, Lab Charter appealed the Hearing Officer's decision, asserting that the decision must be overturned in all respects because Lab Charter did not deny A.L.L. a FAPE.  *Laboratory Charter School v. A.L.L. et al.*, 24-cv-5039, DI 1 at 3, 20-21.  Lab Charter filed its appeal one day past the 90-day deadline for such a filing.  20 U.S.C. § 1415(i)(2)(B) (establishing that, except as provided for by applicable state law, a party bringing a civil action challenging an administrative officer's findings and decision under the IDEA must do so within 90 days of the decision's date).  On June 12, 2025, we granted plaintiff's motion to dismiss Lab Charter's complaint because the complaint was untimely.

3

*Laboratory Charter School v. A.L.L. et al.*, 24-cv-5039, DI 24; DI 25.

Following our adjudication of Lab Charter's unsuccessful appeal of the Hearing Officer's decision, we ordered the parties to confer on a briefing schedule for the instant matter — specifically, plaintiff's request for prevailing party fees and costs — and then issued a schedule. DI 17, 19. Plaintiffs filed a motion for attorney fees and costs on September 12, 2025. DI 20. At this point, Lab Charter had not made any representations to us indicating its intent to file a counterclaim that challenged the Hearing Officer's determination. Indeed, on September 30, 2025, Lab Charter asked for an extension of time to file its response to plaintiffs' fees and costs motion — which we granted. DI 21, 22.

But instead of filing a response to plaintiffs' fees and costs motion, Lab Charter filed a motion asking us to (1) allow it to amend its answer with new matter and a counterclaim, specifically to challenge the validity of the Hearing Officer's decision; and (2) defer as premature a ruling on the fees and costs petition. DI 23 at 1. We struck this motion because it was (1) non-responsive to the schedule that Lab Charter itself negotiated and stipulated, given it did not oppose petitioners' fees and costs motion; (2) filed as an amended answer without a redline of the proposed changes, which our policies and procedures require; and (3) filed without any indication of whether petitioners consented to Lab Charter's reinvention of the schedule. DI 24. Moreover, we ordered the parties to confer and provide a joint status report describing their positions on Lab Charter's motion and apparent new direction for the case. *Id.* The parties filed this report, in which Lab Charter argued that we should permit it to file an amended answer and new matter, and petitioners argued that we should deny Lab Charter this opportunity. DI 26 at 3-10. Lab Charter also submitted the promised memorandum in opposition to plaintiffs' request

4

for fees and costs (DI 25), to which petitioners replied (DI 27).

Today, we resolve petitioners' complaint and motion for prevailing party fees and costs (DI 1; DI 20), as well as Lab Charter's request to file an amended answer with new matter and a counterclaim (DI 26 at 3-5). We deny Lab Charter's request to amend its answer. Moreover, because we conclude that plaintiffs constitute the prevailing party in a final decision under the IDEA,[4] we find that they are entitled to reasonable attorneys' fees and costs. Here, those reasonable fees and costs amount to $164,173.84, which we order Lab Charter to pay to petitioners in our accompanying order.

## II.    MOTIONS AT ISSUE

### A.    Plaintiffs' motion for attorneys' fees and costs

Plaintiffs seek reasonable attorneys' fees and costs arising out of their litigation with Lab Charter, specifically asserting that they are the prevailing party both in (1) the underlying due process proceeding before the Hearing Officer; and (2) Lab Charter's unsuccessful appeal of that Hearing Officer's decision. DI 20-1 at 10. They say that the Hearing Officer awarded them "a total and complete victory" which "absolutely materially altered the legal relationship between the parties[.]" DI 27 at 2. Thus, plaintiffs claim that they are entitled to reasonable attorneys' fees and costs. *Id.* at 2-3; DI 20-2 at 11-12. Plaintiffs aver that the Hearing Officer's decision and order were final and note Lab Charter's failure to timely appeal this determination. DI 27 at 3-4. And contrary to Lab Charter's assertions, plaintiffs urge that the IDEA does not require a

---

[4] Though petitioners argue in their complaint and motion that they are entitled to fees and costs under Section 504 of the Rehabilitation Act and the IDEA, their argument almost exclusively focuses on their entitlement to such fees and costs under the IDEA. *See* DI 20-1 at 11-18. Lab Charter likewise focuses on the IDEA. DI 25 at 5-9. We therefore only address petitioners' prevailing party status, and entitlement to reasonable fees and costs, under the IDEA.

federal court to independently review the merits of the underlying claims before awarding prevailing party attorneys' fees. *Id.* at 4.

As for plaintiffs' requested fees and costs — which now amount to $164,173.84 — plaintiffs argue that the fee statement sets out reasonable and fair hours spent by their counsel in pursuing the legal work for this case. DI 20-1 at 14. They emphasize that the statement provides a "detailed fee invoice [that] specifies all of Plaintiffs' counsel's billed activities in chronological order and . . . includes a clear description, date, and duration of each entry." *Id.* They further assert that the hourly rates constitute reasonable and fair billing rates for their attorneys, paralegals, and staff given their experience and work product, as well as the specialized nature of special education law. *Id.* at 15-17. Plaintiffs also maintain that they are entitled to fees incurred from defending Lab Charter's appeal; because the appeal was filed in direct response to the Hearing Officer's ruling in plaintiffs' favor, plaintiffs' participation in that appeal constituted "the natural and foreseeable continuation of the administrative litigation" which was "necessary to protect the significant compensatory education awarded below and to preserve Plaintiffs' prevailing party status." DI 27 at 8. Plaintiffs further emphasize the lack of argument by Lab Charter that these fees are unreasonable or otherwise objectionable. *Id.* at 9-10.

Lab Charter responds by asking us again to defer any ruling on petitioners' fees and costs request until the parties have submitted full briefing for judgment on the administrative record. DI 25 at 4-5. From Lab Charter's perspective, we have yet to render a disposition regarding whether petitioners constitute the prevailing party on the FAPE claims, and Lab Charter continues to challenge the merits of the Hearing Officer's determinations (which favored plaintiffs). *Id.* at 3-4. To adjudicate the fees and costs request, Lab Charter insists we must first

6

decide whether plaintiffs are the prevailing party — otherwise, we run the risk of generating inconsistent rulings and judicial inefficiencies. *Id.* at 5-6. Notably, Lab Charter does not dispute the reasonableness of petitioners' counsel's hourly rate, nor the hours counsel spent litigating this case. *Id.* at 8. However, Lab Charter does contest petitioners' inclusion of hours related to Civil Action No. 24-cv-5039 in their calculation of reasonable fees and costs. *Id.* at 8-9. By Lab Charter's calculation, $98,364 worth of fees are subject to our review following our disposition of the merits. *Id.* at 8-9. In sum, Lab Charter asks us to tentatively rule that petitioners are entitled to fees amounting to $98,364 plus full costs of $440.38, subject to our final determination as to which party is the final prevailing party under the IDEA. *Id.* at 9.

**B.    Lab Charter's request to file an amended answer with new matter and counterclaim**

Lab Charter seeks permission to file an amended answer with new matter and a counterclaim. DI 23, 26. Its purported amended answer substantially replicates its previously filed answer, *compare* DI 9 at 1-11 *with* DI 23 at 3-12, except for the addition of a "Counterclaim" section. But this "Counterclaim" section likewise is a *verbatim* copy of the amended complaint Lab Charter filed in its appeal before us at Civil Action No. 24-cv-5039. *Compare* DI 23 at 12-30 *with* DI 9-1 at 2-19.[5] So, Lab Charter asks us to permit it to file, as an amended answer, exactly what it filed as its amended complaint in its unsuccessful appeal before us — an appeal that challenged the underlying validity of the Hearing Officer's decision in petitioners' favor. In support of its request, Lab Charter says that our June 12th decision in Civil Action No. 24-cv-5039 stated that Lab Charter could file a motion to amend its answer to the

---

[5] Tellingly, the ECF stamps from Civil Action No. 24-cv-5039 are visible on Lab Charter's amended, and presently operative, answer in the instant case. *See* DI 9-1 at 1-19.

complaint in this case, and that we would consider this motion. DI 25 at 3 (*citing* Civil Action No. 24-cv-5039, DI 24). Lab Charter emphasizes that we never set any deadline for filing such a motion to amend, nor a schedule for the final disposition of petitioners' claims following briefing for judgment on the administrative record below. *Id.* It also observes that we have not yet decided whether petitioners were the prevailing party on these claims, and it notes that petitioners did not bring any independent challenges regarding this question after we disposed of Civil Action No. 24-cv-5039. *Id.* at 3-4. From its perspective, permitting amendment of its answer would foster judicial consistency and efficiency by enabling the full adjudication of the issues before us, without prejudicing petitioners. DI 26 at 4. And even if we deny Lab Charter the ability to amend its answer, Lab Charter insists that briefing on the prevailing party question is necessary because the affirmative defenses in its original answer directly challenge the merits of the Hearing Officer's decision. DI 25 at 4-5. One way or the other, Lab Charter urges us to allow this matter to proceed to briefing on the question of which party should prevail based on the administrative record below. DI 26 at 3.

Plaintiffs object entirely to Lab Charter's request to amend its answer. DI 26 at 6-10. They assert that such an amendment would not serve the interests of justice because it would (1) be futile, given it would still be time-barred by the IDEA's 90-day statute of limitations; (2) cause undue delay, given Lab Charter attempted to file this amendment four months after our decision dismissing its appeal of the Hearing Officer's decision, on the day its response to plaintiffs' fees motion was due pursuant to the parties jointly agreed-upon schedule; and (3) significantly prejudice plaintiffs because they already have expended significant resources and Student is still awaiting his awarded remedy. *Id.* at 6-9. Plaintiffs also maintain that Lab

Charter's proposed counterclaim would be a permissive claim, rather than a compulsory claim, because there is no meaningful overlap between the facts and law regarding plaintiffs' fee request and Lab Charter's attempt to challenge the Hearing Officer's decision. *Id.* at 8.

## III. STANDARD OF REVIEW

### A. Amendment of an answer

Under Federal Rule of Civil Procedure 15, we should freely give leave to amend "when justice so requires." Fed. R. Civ. Pro. 15(a)(2); *United States ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014). However, we may deny leave to amend a complaint when the following is apparent from the record: (1) the moving party demonstrated bad faith, undue delay, or dilatory tactics; (2) such amendment would be futile; or (3) such amendment would prejudice the nonmoving party. *Schumann*, 769 F.3d at 849 (citation modified). "When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (citations modified). We examine "the movant's reasons for not amending sooner." *Id.* (citation modified). In assessing the futility of a proposed amendment, we look to Rule 12(b)(6)'s legal sufficiency standard. *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000) (citations modified). Our courts have dismissed, and upheld the dismissal of, claims under Rule 12(b)(6) because they are untimely based on the applicable statute of limitations. *See, e.g., Pension Trust Fund for Operating Eng'rs v. Mortgage Asset Securitization Transactions, Inc.*, 730 F.3d 263, 280 (3d Cir. 2013); *Griffin v. State of New Jersey Dep't of Hum. Servs.*, 2021 WL 3780078, at *2 (3d Cir. Aug. 26, 2021).

9

**B.      IDEA standards for attorneys' fees and the finality of administrative decisions**

The IDEA permits courts to award attorneys' fees to a "prevailing party." 20 U.S.C. § 1415(i)(3)(B)(i); *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 293 (2006); *M.R. v. Ridley Sch. Dist.*, 868 F.3d 218, 224 (3d Cir. 2017). This includes "a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). "[T]o 'prevail' under the IDEA . . . a party must obtain a material alteration of the legal relationship of the parties that is judicially sanctioned." *M.R.*, 868 F.3d at 224 (citation modified); *see also Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989). A party only achieves such an alteration and prevails for purposes of obtaining attorneys' fees if she obtains merit-based relief. *M.R.*, 868 F.3d at 224 (citation modified). If the merit-based relief "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff[,]" then the plaintiff may obtain attorneys' fees and costs as the prevailing party. *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 251 (3d Cir. 1999), *abrogated on other grounds by P.P. v. West Chester Area Sch. Dist.*, 585 F.3d 727 (3d Cir. 2009). "A party need not achieve all of the relief requested nor even ultimately win the case to be eligible for a fee award." *J.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 271 (3d Cir. 2002). Moreover, we utilize a "generous formulation" in evaluating whether a party constitutes a prevailing party. *Id.* (citation modified). "Plaintiffs may be considered 'prevailing parties' for attorney[s'] fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *P.N. v. Clementon Bd. Of Educ.*, 442 F.3d 848, 855 (3d Cir. 2006) (*citing Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). This inquiry essentially boils down to a two-part test: (1) did the party achieve relief; and (2) was

there a causal connection between the litigation and the relief obtained from the opposing party. *S.P. v. Pa. Dep't of Educ.*, 731 Fed. Appx. 113, 115 (3d Cir. 2018) (citation modified).

As for finality, the IDEA provides that a decision made by a hearing officer in a due process hearing is final, though it is appealable subject to the applicable statutory provisions. § 1415(i)(1)(A). Any party aggrieved by the hearing officer's findings and decision may appeal to the state educational agency. *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 274 (3d Cir. 2014) (*citing* § 1415(g)(1)). After completing this appeal, parties may then bring a civil action in federal or state court,[6] but to bring such an action in federal court, parties generally must exhaust their administrative remedies beforehand. *Id.* (citation modified). In *D.E.*, the plaintiff received a favorable decision from the hearing officer, and because neither party appealed that decision, the hearing officer's decision became "final and binding under the IDEA." *Id.* at 276 (citation modified).

Fees awarded pursuant to the IDEA "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." § 1415(i)(3)(C). To determine the reasonableness of such fees, we "multiply[] the number of hours reasonably expended by a reasonable hourly rate." *Sch. Dist. of Phila. v. Kirsch*, 722 Fed. Appx. 215, 229 (3d Cir. 2018) (citation modified). In assessing the reasonableness of an hourly

---

[6] 20 U.S.C. § 1415(i)(2) governs the ability of "[a]ny party aggrieved by the findings and decision" of an administrative hearing officer arising from, *inter alia*, an IDEA due process hearing, to bring a civil action in a federal district court. *Id.* The aggrieved party generally has 90 days from the date of the hearing officer's decision to bring such a civil action. § 1415(i)(2)(B). Subject to this 90-day limitation, when the aggrieved party files a civil action, the federal district court shall (1) receive the administrative proceedings' records; (2) hear additional evidence per a party's request; and (3) grant such relief as it deems appropriate, based upon the preponderance of the evidence. § 1415(i)(2)(C).

rate, we start, but do not end with, "the attorney's usual billing rate." *Id.* (citation modified). We may reduce the attorneys' fees awarded to the prevailing party when "the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience." § 1415(i)(3)(F)(ii). It is the prevailing party's burden to establish, *via* satisfactory evidence and the attorney's affidavits, that the requested hourly rates satisfy this reasonableness standard. *Kirsch*, 722 Fed. Appx. at 229 (citation modified).

The IDEA generally provides federal district courts with jurisdiction of actions brought under section 1415 of the statute. § 1415(i)(3)(A). Importantly, the IDEA also furnishes district courts with discretion in its award of attorneys' fees for "any action or proceeding brought under this section." § 1415(i)(3)(B)(i). We thus have discretion in determining what hours were reasonably expended in furtherance of the outcome achieved by the prevailing party. In the context of the Equal Access to Justice Act, 28 U.S.C.S. § 2412, the U.S. Supreme Court has stated that "absent unreasonably dilatory conduct by the prevailing party in any portion of the litigation, which would justify denying fees for that portion, a fee award presumptively encompasses all aspects of the civil action." *Comm'r v. Jean*, 496 U.S. 154, 161 (1990) (citation modified). The Court further explained that "where administrative proceedings are necessary to the attainment of the results Congress sought to promote by providing for fees, they should be considered part and parcel of the action for which fees may be awarded." *Id.* at 162 (citation modified).

IV.     **DISCUSSION**

A.      **Lab Charter's request to amend its answer is denied**

As noted, Lab Charter's proposed amended complaint is essentially a *verbatim* replica of its amended complaint in Civil Action No. 24-cv-5039. We dismissed Lab Charter's appeal in Civil Action No. 24-cv-5039 under Rule 12(b)(6) because it was untimely. Civil Action No. 24-cv-5039, DI 24. It thus would be futile to permit Lab Charter's counterclaims — which we already dismissed in the other case — to move forward in this case. *See Pension Trust Fund*, 730 F.3d at 280; *Griffin*, 2021 WL 3780078, at *2. Accordingly, we deny Lab Charter's request to amend its answer.

B.      **We have jurisdiction to decide petitioners' complaint and motion regarding fees and costs based on the present administrative record**

This is a bit of an unusual case. At least as it has occurred in the Third Circuit, district courts typically decide a party's fees and costs motion either (1) after there has been a settlement between the parties respecting the IDEA-based claims; or (2) as part of a party's request for modified *de novo* review of the administrative record below.[7] Here, there was no such settlement agreement, and Lab Charter lost its opportunity to seek modified *de novo* review of the administrative record below by failing to timely appeal the Hearing Officer's decision.

---

[7] *See, e.g.*, *R.B.A. v. Jersey City Bd. of Educ.*, 2023 WL 3098713 (D.N.J. Apr. 26, 2023); *Rayna P. v. Campus Cmty. Sch.*, 390 F. Supp. 3d 556 (D. Del. 2019); *J.N. v. Penn-Delco Sch. Dist.*, 2017 WL 395481 (E.D. Pa. Jan. 30, 2017); *Durant v. Terry*, 2016 U.S. Dist. LEXIS 133006 (D.V.I. Sept. 28, 2016) (not available on Westlaw); *Charles O. v. Sch. Dist. of Philadelphia*, 2014 WL 4794993 (E.D. Pa. Sept. 26, 2014); *Hannah L. v. Downingtown Area Sch. Dist.*, 2014 WL 3709980 (E.D. Pa. July 25, 2014); *Gwendolyn L. v. Sch. Dist. of Philadelphia*, 2014 WL 2611041 (E.D. Pa. June 10, 2014); *L. Offs. of David J. Berney, P.C. v. Sch. Dist. of Philadelphia*, 2014 WL 2611188 (E.D. Pa. June 10, 2014); *J.J. v. Sch. Dist. of Philadelphia*, 2014 WL 2611044 (E.D. Pa. June 10, 2014); *T.F. v. N. Penn Sch. Dist.*, 1999 WL 627919 (E.D. Pa. Aug. 18, 1999).

Accordingly, we are faced with a situation where we are adjudicating only whether petitioners are entitled to attorneys' fees and costs arising out of their IDEA claims, but we are not doing so in the context of a previous settlement agreement by the parties or a substantive challenge to the administrative decision.

Despite the odd way we arrived here, the path is sufficiently clear. The IDEA grants us jurisdiction over actions brought under section 1415 of the IDEA. § 1415(i)(3)(A). The underlying administrative proceeding was brought under § 1415, and that proceeding resulted in a favorable outcome for petitioners. This decision is final and, because Lab Charter did not timely appeal it, we cannot effectively override the statutorily imposed 90-day deadline by now conducting modified *de novo* review of the administrative record. At this point, the only question properly before us is what, if any, attorneys' fees and costs should be awarded to petitioners. The IDEA gives us discretion in making this determination "for any action or proceeding brought under this section[.]" § 1415(i)(3)(B)(i). Moreover, petitioners' request for attorneys' fees and costs stems from their successful pursuit of a § 1415 action (at the administrative level) and their successful defense of Lab Charter's appeal of that victory (which also constitutes a § 1415 action). Nothing in the IDEA indicates that we cannot decide petitioners' fees and costs motion based upon the present administrative record, particularly when the administrative decision below is final. And as the U.S. Supreme Court cautioned, "[a] request for attorney[s'] fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437. Accordingly, we conclude that the IDEA permits us, based on the present administrative record, to (1) determine whether petitioners are the prevailing party, under the IDEA, in both the administrative due process hearing conducted below and the appeal lodged at Civil Action No.

14

24-cv-5039; and (2) if petitioners are the prevailing party, to award them reasonable attorneys' fees and costs related to this litigation.[8]  We now turn to these two questions.

**C.      Petitioners are the prevailing party in a final decision under the IDEA with respect to the administrative due process proceeding but not with respect to Lab Charter's appeal of that proceeding's outcome**

It is clear from the record that petitioners are the prevailing party, as understood in the IDEA, in the underlying administrative due process proceeding.  Petitioners' complaint with the ODR sought compensatory education for Lab Charter's alleged failure to provide a FAPE to Student during the 2021-2022 and 2022-2023 school years and the two applicable ESY periods.  DI 20-4 at 2.  On the merits, the Hearing Officer determined that Lab Charter violated Student's right to a FAPE under the IDEA during these two school years and two ESY periods, and she ordered Lab Charter to provide hourly compensatory education to Student for these violations.  *Id.* at 27-28.  This merit-based relief of compensatory education certainly materially altered the legal relationship between petitioners and Lab Charter by modifying Lab Charter's behavior in a way that directly benefited plaintiffs.  *Ridgewood*, 172 F.3d at 251.  Plaintiffs are thus the prevailing party in the administrative due process proceeding, such that they are entitled to reasonable attorneys' fees and costs.  *Id.*

Additionally, the Hearing Officer's decision in plaintiffs' favor was final. § 1415(i)(1)(A).  Though that decision was appealable, Lab Charter — the party aggrieved by

---

[8] Caselaw from other circuits lends support to our conclusion.  *See, e.g.*, *Combs by Combs v. School Bd.*, 15 F.3d 357, 359 n.10 (4th Cir. 1994) (citing cases from the D.C. Circuit and Fifth Circuit for the proposition that "[t]he IDEA allows parties to bring an independent action in federal court solely to recover fees incurred in an administrative proceeding."); *Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1220 (9th Cir. 2016) (discussing the district court's adjudication of a fees and costs motion, which followed an administrative decision under the IDEA that neither party appealed).

15

the decision — did not file a timely appeal. Just as the hearing officer's decision in *D.E.* became "final and binding under the IDEA" when the plaintiff received a favorable decision from the hearing officer and neither party appealed that decision, the Hearing Officer's decision here became final and binding when plaintiffs' prevailed below and neither party timely appealed the Hearing Officer's determination. *D.E.*, 765 F.3d at 276.

However, we conclude that petitioners are not the prevailing party under the IDEA with respect to Lab Charter's appeal of the Hearing Officer's decision and order. To be considered a prevailing party under the IDEA, a party must obtain merit-based relief. *M.R.*, 868 F.3d at 224 (citation modified). We adjudicated Lab Charter's appeal of the Hearing Officer's determination on procedural grounds — based on the filing deadline — not on the merits. *Laboratory Charter School v. A.L.L. et al.*, 24-cv-5039, DI 24. Thus, for purposes of the IDEA, there is no prevailing party with respect to Lab Charter's appeal at Civil Action No. 24-cv-5039. But, as explained below, this does not affect petitioners' ultimate fees and costs award.

D. **Petitioners are entitled to $164,173.84 in attorneys' fees and costs, which includes fees and costs incurred from the administrative proceeding as well as the federal litigation at Civil Action Nos. 24-cv-4998 and 24-cv-5039**

Petitioners request $164,173.84 in attorneys' fees and costs for the work performed during the administrative due process proceeding and the two federal cases, Civil Action Nos. 24-cv-4998 and 24-cv-5039, related to that proceeding. DI 27 at 7, 10. They provide a detailed, itemized record of the legal work performed in these matters, which includes (1) a description of the work performed; (2) the person who completed it; (3) the date it was performed; (4) the hours spent performing it; (5) the hourly rate for that work; and (6) the total amount billed for it. DI 27-1 at 1-22. Petitioners also provide a staff summary, which shows the different rates charged

16

by its legal staff for the work performed. *Id.* at 22-23.

As petitioners explain in their multiple declarations, these rates comport with — and are mostly lower than — the rates established by Community Legal Services (CLS).[9] DI 20-7 at 8-9; DI 20-12 at 3. The Third Circuit has found that CLS's hourly rates constitute "a fair reflection of the prevailing market rates in Philadelphia" and have thus adjudged them reasonable. *Maldonado v. Houstoun*, 256 F.3d 181, 187-88 (3d Cir. 2001) (citation modified). CLS's rates may even undervalue the appropriate hourly rate for special education litigation, given the highly specialized nature of this field. *See, e.g.*, *E.C. & C.O.*, 91 F. Supp. 3d. at 606. Notably, Lab Charter does not dispute the reasonableness of petitioners' counsel's hourly rates. DI 25 at 8. Based on their close adherence to the CLS rates, the specialized nature of special education law, and Lab Charter's lack of objection thereto, we find plaintiffs' hourly attorney rates are reasonable.

We also conclude that petitioners have carried their burden of demonstrating that the

---

[9] *Compare* 27-1 at 22-23 *with* 20-10 at 1 (Mr. Wolpert's hourly rates were $525-$625, compared to the applicable CLS range of $735-$850; Ms. Gordon's hourly rates were $380-$465, compared to the applicable CLS range of $535-$625; Ms. Vermilion's hourly rates were $285-$375, compared to the applicable CLS range of $320-$415).

The only exception is the rate charged by Elizabeth Filipe, CSP, LPC — an educational paralegal who worked on this matter for plaintiffs. She technically falls within CLS's rate band for paralegals with 1-10 years' experience, which provides an hourly rate range of $190-$240. DI 20-7 at 8-9; DI 20-10 at 1. Ms. Felipe's hourly rates were $235-$245. DI 27-1 at 22-23. However, we find this very slight upward departure reasonable given that Ms. Filipe had 38 years of public education experience, including work as a special education teacher and 18 years as a certified school psychologist, in addition to her 5.5 years as a paralegal, when she billed these rates. DI 20-7 at 8-9. Moreover, special education is a highly specialized field, for which CLS's rates may be too low to serve as an appropriate benchmark. *See E.C. & C.O. v. Sch. Dist. of Phila.*, 91 F. Supp. 3d 598, 606 (E.D. Pa. 2015) (noting that in the special education context, the CLS fee schedule may undervalue the appropriate hourly rates).

hours spent litigating the administrative due process hearing and the two related federal cases were "reasonably expended." *Kirsch*, 722 Fed. Appx at 229. Petitioners' detailed record of their work on these matters supports this conclusion. Moreover, Lab Charter does not contest the hours petitioners spent litigating the instant case, or the reasonableness of the work they performed for such litigation. DI 25 at 8. Indeed, Lab Charter's only objection to petitioners' fees and costs calculation is the inclusion of hours related to the Civil Action No. 25-cv-5039 action. *Id.* at 8-9. But as the U.S. Supreme Court has recognized, "a fee award presumptively encompasses all aspects of the civil action." *Jean*, 496 U.S. at 161 (citation modified). Here, petitioners prevailed at the administrative due process proceeding, sought fees and costs related to their work from that proceeding, and defended their victory in that proceeding when Lab Charter attempted to appeal its outcome. All this work was reasonably expended in furtherance of the outcome achieved by petitioners. Accordingly, we conclude that petitioners are entitled to attorneys' fees and costs related to the administrative proceeding below, as well as the two federal cases arising therefrom — Civil Action Nos. 24-cv-4998 and 25-cv-5039 — in the amount of $164,173.84.

V.     **CONCLUSION**

Lab Charter's request to amend its answer with new matter and a counterclaim is denied. Additionally, we grant petitioners' motion for attorneys' fees and costs and find that petitioners are entitled to $164,173.84 in such fees and costs, which petitioners incurred from the administrative due process proceeding and the two related federal cases. Moreover, as petitioners filed the instant action for the sole purpose of obtaining these fees and costs, today's judgment concludes this case.